UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY P. FAVOROSO, | Civil No. 11-5061 (RBK) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION & ORDER** |
| STATE OF NEW JERSEY, et al., | |
| Defendants. | |

This matter comes before this Court upon Plaintiff's submission of a civil complaint accompanied by his application to proceed in this matter in forma pauperis. See Docket Entries Nos. 1 and 1-1. Both Plaintiff's in forma pauperis application and his complaint raise numerous concerns. For the reasons detailed below, this Court will deny Plaintiff in forma pauperis status without prejudice, subject to Plaintiff's submission of a certified prison account statement detailing Plaintiff's assets, as required by the statute, and establishing to this Court's satisfaction that Plaintiff is eligible to proceed in this matter as pauper; the Court will also dismiss Plaintiff's complaint without prejudice, allowing Plaintiff an opportunity to file an amended complaint complying with the guidance provided to Plaintiff in this Memorandum Opinion and Order.

1. Section 1914 provides that "[t]he [C]lerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court . . . to pay a filing fee of $ 350 . . . ." 42 U.S.C. § 1914(a). Indeed, a litigant's pleading

> is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe . . . the form of the document, . . . the court and office in which it must be lodged, and the requisite filing fee.

Artuz v. Bennett, 531 U.S. 4, 8-9 (2000) (citations and footnote omitted).

However, the Prison Litigation Reform Act ("PLRA") allows an imprisoned litigant to prosecute his/her claims without prepayment of the filing fee if that litigant files an affidavit of poverty and a certified prison account statement for the six-month period immediately preceding the submission of the pleading (jointly, "in forma pauperis application)", and such in forma pauperis application establishes, to the court's satisfaction, that the litigant is eligible to proceed in his/her litigation as pauper. See 28 U.S.C. § 1915(a)(2) and § 1915(a)(1) (leave to proceed IFP may be granted in any suit to a litigant "who submits an affidavit [which demonstrates] that the [litigant] is unable to pay such fees or give security therefor"). As the Supreme Court, observed that, "while [the filing fee might be] an 'extremely nominal' sum, if one does not have it and is unable to get it[,] the fee might as well be [a very large sum]." Smith v. Bennett, 365 U.S. 708, 712 (1961).

2. Here, Plaintiff's in forma pauperis application indicates that he earns $80 monthly, and his prison account statement (reflecting, oddly enough, only the balance figure rather than the transactions that took place within the last six months) shows that Plaintiff has a "spendable" balance of $1,654.51. See Docket Entry No. 1-1, at 2 and 4. This information suggests that Plaintiff is unlikely to be eligible to proceed in this matter as pauper.[1]  However, since Plaintiff's prison account statement reflected only the final

---

[1] The Supreme Court held that one need not be absolutely destitute to qualify for in forma pauperis status. See Adkins v. E. I. DuPont De Nemours & Co., Inc., 335 U.S. 331, 339 (1948). In Adkins, P. V. Adkins brought an action in Oklahoma district court on behalf of himself and twelve other employees of the defendant in which he sought to recover overtime compensation, damages and attorney's fees pursuant to the provisions of the Fair Labor Standards

figure, rather than the transactions that took place during the last six months, this Court will allow Plaintiff an opportunity to submit his certified prison account statement for the last six months (as required by the statute) together with his amended complaint.

3. In conjunction with the foregoing, the Court takes this opportunity to highlight to Plaintiff certain legal aspect that might assist Plaintiff in execution of such amended pleading.[2]

Here, Plaintiff named the following persons and entities as Defendants in this action:

---

Act of 1938, 29 U.S.C. §§ 201-219, and Executive Order # 9240. During the course of litigation Adkins died and his wife, having been named administratrix of his estate, was substituted as plaintiff. The action was subsequently dismissed on its merits and Mrs. Adkins filed a timely motion in district court requesting leave to appeal the matter to the United States Court of Appeals for the Tenth Circuit. Filed with the motion was a petition to proceed in forma pauperis which contained a supporting financial affidavit. Adkins stated in the affidavit that she was a widow 74 years of age; the estimated cost of her record on appeal was $ 4,000; all that she owned was a house inherited from her husband which had been appraised at a value of $ 3,450; her only source of income was rent from parts of her home; without such income she would not be able to purchase the necessities of life. After a series of rulings on the matter the district and appellate courts refused to grant Adkins leave to appeal in forma pauperis pursuant to § 1915, concluding that a party desiring to proceed in forma pauperis must be able to show that (s)he had contributed virtually his/her last dollar to the cost of litigating his suit. In reversing the judgment of the court of appeals, the Supreme Court ruled that a federal court should not force a party to prove that (s)he is absolutely destitute before allowing that person to proceed in forma pauperis. See Adkins, 335 U.S. at 339. Rather, the decision whether to allow a litigant to proceed in forma pauperis is within the court's sound discretion. See Kinney v. Plymouth Rock Squab Co., 236 U.S. 43, 46 (1915). Correspondingly, the standard for granting the motion is whether the payment of the fees and costs would be *unduly burdensome*. Accord Souder v. McGuire, 516 F.2d 820 (3d Cir. 1975) (holding that the district court erred, where a prisoner's account had $ 50.07 and that he received a $ 7.50 stipend per week at the time when the district court denied his in forma pauperis application; the Court of Appeals held that the amenities that this money could buy did not need to be surrendered in order to litigate the case in forma pauperis in the district court). Here, Plaintiff's housing and subsistence is provided by the prison facility where he is incarcerated. Moreover, Plaintiff earns $80 monthly and had $1,654, 51 "spendable" balance. These facts strongly suggest that Plaintiff is unlikely to be eligible to proceed in forma pauperis in this matter, since payment of $350 fee would not be unduly burdensome to him.

   [2] No statement made in this Memorandum Opinion and Order shall be construed as expressing this Court's position that Plaintiff's pleading are free from deficiencies *other* than those highlighted in this Memorandum Opinion and Order.

(a) State of New Jersey; (b) New Jersey Department of Corrections; (c) Adult Diagnostic and Treatment Center, Psychiatry Department; (d) New Jersey Parole Board Panel Member Yolette C. Ross; (e) New Jersey Parole Board Panel Member Samuel J. Plumeri, Jr.; (f) New Jersey Appellate Court Employee Joseph H. Orlando; (g) New Jersey Appellate Court Employee Anita B. Toldo; (h) Atlantic County Probation Office; (i) Probation Officer George Wolf; (j) Atlantic County Detective Finan; (k) Atlantic County Detective Johannesson; (l) Salem County Judge William L. Forester; (m) Monmouth County Judge Bette Uhrmacher; (n) Prosecutor Thomas Fichter; (o) Trial Attorney Robert N. Agre; (p) Any Unknown John and Jane Does with Relative Influence in this Suit; (q) Governor Christopher J. Christie; and (r) Commissioner Gary M. Lanigan. See Docket Entry No. 1, at 2. The factual assertions raised in Plaintiff's 46-paragraph complaint describe – in a diary-like fashion – the events which, allegedly, took place during more than half a decade, i.e., between March 21, 2006, and December 21, 2010. See id. at 5-9. This panoply of claims alleges, inter alia, that Plaintiff was unduly transferred from one prison to another, that he was denied his medication during a certain single day, that he was denied an opportunity to call his attorney on that particular day, that he was given an unfavorable mental health examination by certain psychiatrists and/or psychologists, that he was visited by two detectives on another day and experienced panic seeing those two detectives, that he was issued an arrest warrant for violation of the terms of his probation, that he had a certain facsimile sent about him to a certain state judge, that he was sentenced to certain state terms of imprisonment, that he had these terms of imprisonment imposed consecutively, that he had his motions for re-sentencing denied by state courts,

|   |   |
|---|---|
|   | that he had his appellate applications returned for corrections due to his failure to comply with local court rules, that he was displeased with his parole proceedings (finding these proceedings "vulgar and negative"), that he was disappointed with the outcome of his parole proceedings, etc. See id.  On the basis of the foregoing, Plaintiff asserts that his constitutional rights were violated and seeks this Court's "declaration" to that effect, as well as his release on parole "immediately," plus grant of "additional" good-conduct-time credit to him, and also $1 million in compensatory damages and $1 million in punitive damages fro each of the above-named Defendant (i.e., about $36,0000,000 in damages). See id. at 10-11. |
| 4. | To start, it warrants mentioning that a civil complaint must conform to the requirements set forth in Rules 8(a) and (e) of the Federal Rules of Civil Procedure.  The Rules require that the complaint be simple, concise, direct and set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993); cf. McNeil v. United States, 508 U.S. 106, 113 (1993) (procedural rules in civil litigation should not be interpreted so as to excuse mistakes by those who proceed without counsel); Burks v. City of Philadelphia, 904 F. Supp. 421, 424 (E.D. Pa. 1995) (pleading which represented a "gross departure from the letter and the spirit of Rule 8(a)(2)" in failing to contain a short and plain statement of claims struck by District Court); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (affirming dismissal of pro se civil rights complaint naming numerous defendants, setting forth numerous causes of action, and numbering fifteen pages and eighty-eight paragraphs).  Here, Plaintiff's diary-like complaint fails to comply |

with the requirements of Rule 8. "A District courts should not have to read and decipher tomes disguised as pleadings." <u>Lindell v. Houser</u>, 442 F.3d 1033, 1035 n.1 (7th Cir. 2006). Therefore, the complaint is subject to dismissal on this ground.

5. Moreover, Rule 20(a)(2) of the Federal Rules of Civil Procedure limits the joinder of defendants, and Rule 18(a), governs the joinder of claims. <u>See</u> Fed. R. Civ. P. 18(a), 20(a)(2). Rule 20(a)(2) provides: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A) and (B). Rule 18 (a) provides : "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Wright & Miller's treatise on federal civil procedure explains that, where multiple defendants are named, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all . . .

Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, <u>Federal Practice & Procedure Civil 3d</u> §1655; <u>see also</u> <u>United States v. Mississippi</u>, 380 U.S. 128, 143 (1965) (where

county registrars were alleged to be carrying on activities which were part of a series of transactions or occurrences the validity of which depended upon questions of law or fact common to all of them, joinder of registrars in one suit as defendants was proper under Rule 20(a)); Ross v. Meagan, 638 F. 2d 646, 650 n.5 (3d Cir. 1981), overruled on other grounds by, Neitzke v. Williams, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied). Consequently, a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact. See Fed. R. Civ. P. 20(a)(2). As the United States Court of Appeals for the Seventh Circuit once explained, a prisoner may not join in one case all defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . .
>
> A buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner.

George v. Smith, 507 F. 3d 605, 607 (7th Cir. 2007).

        Here, Plaintiff's complaint asserts a panoply of transactions involving persons who had no relation to other transactions: all these transactions and named Defendants are merely "stitched" together by Plaintiff's overall assertion that he should not have spent as much time in prison as he did/does.  See, generally, Docket Entry No. 1.  Since the Federal Rules of Civil Procedure do not allow such "stitching," Plaintiff's complaint is also subject to dismissal for failure to meet the requirements of Rules 18 and 20.

6.    To add to the foregoing, the bulk of transactions alleged in the complaint appear facially untimely.  The statute of limitations on civil rights claims is governed by New Jersey's two-year limitations period for personal injury.  See Goodman v. Lukens Steel Co., 482 U.S. 656, 661-62 (1987); Wilson v. Garcia, 471 U.S. 261, 276 (1985); O'Connor v. City of Newark, 2006 WL 590357 *1 (3d Cir. March 13, 2006); Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).  New Jersey's statute of limitations for personal injury claims requires that "an action for an injury to the person caused by a wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action."  Cito, 892 F.2d at 25 (quoting Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987)).  Under federal law governing the accrual of claims, "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action."  Montgomery, 159 F.3d at 126 (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991)); see also Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998).  "Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed."

Oshiver v. Levin, 38 F.3d 1380, 1387 (3d Cir. 1994). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 125 S. Ct. 1807, 1814 (2005). The Third Circuit instructs that equitable tolling is appropriate when "the principles of equity would make the rigid application of a limitation period unfair, such as when a [plaintiff] faces extraordinary circumstances that prevent him from filing a timely [complaint] and the [plaintiff] has exercised reasonable diligence in attempting to investigate and bring his claims." LaCava v. Kyler, 398 F.3d 271, 275-276 (3d Cir. 2005). Mere excusable neglect is not sufficient. Id.; Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003); Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618-19 (3d Cir. 1998); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). Extraordinary circumstances have been found where (1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum, see Jones, 195 F.3d at 159, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim, see Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005). Here, Plaintiff's complaint was executed on August 26, 2011 (it was received by the Clerk on September 1, 2011, and docketed on September 6, 2011) and, therefore, could not have be handed by Plaintiff to his prison officials for mailing to this Court at any date prior to August 26, 2011. Which indicates that all Plaintiff's challenges related to the events that took, allegedly, place on or prior to

August 27, 2009, are necessarily untimely.[3] Correspondingly, all his challenges based on the transactions that took place on or prior to August 27, 2009, are subject to dismissal with prejudice, and they shall *not* be re-raised in Plaintiff's amended pleading, if such is filed.

7. Furthermore, the bulk of Plaintiff's claims and the non-monetary remedies he is seeking indicate that he is challenging the fact and/or the length of his confinement, be it the sentence(s) imposed or the release-on-parole denied. Such challenges cannot be raised in the instant action, since these challenges are habeas claims. Federal law provides two avenues of relief to prisoners: a petition for habeas corpus and a civil rights complaint. See Muhammad v. Close, 540 U.S. 749, 750 (2004). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . [while] requests for relief turning on circumstances of confinement [fall within the realm of] a § 1983 action." Id. In a series of cases beginning with Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court analyzed the intersection of civil rights and habeas corpus. In Preiser, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the

---

[3] Plaintiff indicated that he was actively litigating all his claims listed in the complaint administratively, see docket Entry No. 1, at 9, and, hence, could have commenced the instant action timely. Therefore, no equitable tolling consideration is implicated in this matter. The Court also stresses that no statement made in this Memorandum Opinion and Order shall be construed that the Court's finding that all Plaintiff's claims arising from transactions that took place after August 27, 2009, are timely: the timeliness of the challenges raised on the basis of transactions that transpired between August 27, 2009, and September 1, 2009, are an issue of fact to be determined, if such need arises, by means of an evidentiary hearing.

credits, which would have resulted in their immediate or speedier release. See id. at 476. The prisoners did not seek compensatory damages for the loss of their credits. See id. at 494. Assessing the prisoners' challenge, the Supreme Court held that a prisoner must bring a suit for equitable relief that, effectively, challenges "the fact or duration of confinement" as a habeas corpus petition. See id. at 500. The Court of Appeals for the Third Circuit explained the distinction between the availability of civil rights relief and the availability of habeas relief as follows:

> [W]henever the challenge ultimately attacks the "core of habeas" – the validity of the continued conviction or the fact or length of the sentence – a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition. Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.

Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002).

Therefore, a prisoner should file an application for a writ of habeas corpus if (s)he "seek[s] to invalidate the duration of [his/her] confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody." See Wilkinson v. Dotson, 544 U.S. 74, 81 (2005). In contrast, if a judgment in the prisoner's favor would not affect the fact or duration of the prisoner's incarceration, habeas relief is unavailable and a civil complaint is the appropriate form of remedy. See, e.g., Ganim v. Federal Bureau of Prisons, 235 F. App'x 882 (3rd Cir. 2007) (holding that district court lacks jurisdiction under § 2241 to entertain prisoner's challenge to his transfer between federal prisons); Bronson v. Demming, 56 F. App'x 551, 553-54 (3rd Cir. 2002) (habeas relief

was unavailable to inmate seeking release from disciplinary segregation to general population, and district court properly dismissed habeas petition without prejudice to any right to assert claims in properly filed civil rights complaint).  Therefore, to the degree Plaintiff wishes to challenge procedural aspects of his parole hearing or the conditions of his confinement, Plaintiff *may* raise such challenges in a civil action.  However, all challenges attacking Plaintiff's sentence, the length of his incarceration, the outcome of his parole hearing, or akin, must be raised by means of a timely and duly exhausted petition seeking habeas relief,[4] see, e.g., Fain v. Morgan, 255 F. App'x  6442-3 (3d Cir. 2007), and they shall *not* be re-raised in Plaintiff's amended pleading, if such is filed.

8. Next, while – granted the uncertainty as to Plaintiff's eligibility for in forma pauperis status and the above-listed deficiencies – this Memorandum Opinion and Order does not aim to screen Plaintiff's challenges for sua sponte dismissal, the Court finds it warranted to explain to Plaintiff the bar on claims asserting purely respondeat superior challenges or the bar as to the claims based on facts unrelated to the named defendants.  A litigant does not state a cognizable claim if he asserts nothing but a claim based on the respondeat superior theory.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-54 (2009); Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'"  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v.

---

[4]  No statement made in this Memorandum Opinion and Order shall be construed as expressing this Court's position that Plaintiff's habeas challenges, if raised, are valid (or invalid), either substantively or procedurally.

Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Moreover, even if the litigant's claims are not based on the doctrine of respondeat superior, the litigant still must assert specific facts implicating defendants: personal involvement by a defendant in the alleged wrongs is an indispensable element of a valid legal claim. See Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995); Sample, 885 F.2d at 1100; Rode, 845 F.2d at 1207; accord Mimms v. U.N.I.C.O.R., 386 F. App'x 32, 2010 U.S. App. LEXIS 14321, at *4 (3d Cir. July 13, 2010) ("The District Court properly dismissed the claims against [those defendants with regard to whom the plaintiff] simply failed to state any allegation," citing Iqbal, 129 S. Ct. at 1949). Here, Plaintiff named, as Defendants in this action, the Governor, the Commissioner, John and Jane Does, etc., even though it is self-evident from Plaintiff's complaint that he knows no facts indicating that these individuals were personally involved in the transactions Plaintiff alleged in his complaint. Therefore, Plaintiff's amended pleading, if filed, shall *not* name, as Defendants, any individual in connection to whom Plaintiff cannot allege facts indicating personal involvement.

9. Finally, Plaintiff's long list of Defendants includes such juridical entities as the State, the Department of Corrections, a department within a correctional facility, a probation office, etc., that is, in addition to Plaintiff's claims raised against state employees in their *official* capacities. None of these claims is valid. A suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). Thus, the Eleventh Amendment protects states and their agencies and

departments from suit in federal court regardless of the type of relief sought. See Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. See Quern v. Jordan, 440 U.S. 332 (1979). Correspondingly, neither States, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983). Thus, Plaintiff's claims for monetary damages against the State, the Department of Corrections, a department within a correctional facility, a probation office, and Plaintiff's claims raised against state employees in their official capacities are facially deficient and shall *not* be raised in Plaintiff's amended pleading, if such is filed.

IT IS THEREFORE on this __17th__ day of __April__, 2012,

ORDERED that Plaintiff's application to proceed in forma pauperis is DENIED WITHOUT PREJUDICE; and it is further

ORDERED that the Clerk shall administratively terminate this action, without filing the Complaint or assessing a filing fee, by making a new and separate entry on the docket reading "CIVIL CASE TERMINATED"; and it is further

ORDERED that administrative termination is not a "dismissal" for purposes of the statute of limitations, and that if this § 1983 case is reopened pursuant to the terms of this Order, it is not thereby subject to the statute of limitations bar, provided the original Complaint was timely. See Houston v. Lack, 487 U.S. 266 (1988); McDowell v. Delaware State Police, 88 F.3d 188, 191 (3d Cir. 1996); Williams-Guice v. Board of Education, 45 F.3d 161, 163 (7th Cir. 1995); and it is further

ORDERED that Plaintiff may have the above entitled case reopened if, within 30 days of the date of the entry of this Order, Plaintiff either pre-pays the $350.00 filing fee or files with the Clerk a six-month prison account statement, as required by 28 U.S.C. § 1915(a); and it is further

ORDERED that, in the event Plaintiff elects to prepay his $350.00 filing fee or submits his six-month prison account statement qualifying Plaintiff as indigent, Plaintiff shall accompany such submission by his amended civil complaint complying with the requirements of Rules 8, 18 and 20, and stating allegations not barred by the statute of limitations, falling withing Section 1983 mandate, and stating factual allegations against defendants personally involved in the alleged wrongs; and it is further

ORDERED that, if Plaintiff prepays the $350.00 filing fee (or files his six-month prison account statement) and submits such amended pleading complying with the guidance provided to him herein, and makes these filings and submissions within 30 days of the date of the entry of this Memorandum Opinion and Order, then the Court will enter an order directing the Clerk to reopen the case; and it is further

ORDERED that no statement made in this Memorandum Opinion and Order shall be construed as this Court's withdrawal of its jurisdiction over this action; and it is finally

ORDERED that the Clerk shall serve this Memorandum Opinion and Order upon Plaintiff by regular U.S. mail, together with a blank in forma pauperis application form and a blank civil rights complaint.

s/Robert B. Kugler
**ROBERT B. KUGLER**
**United States District Judge**